NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIST FINANCIAL CORPORATION f/k/a LEESPORT FINANCIAL CORPORATION f/k/a MADISON BANK, | : |
| Plaintiff, | : |
| v. | : |
| ANTHONY L. TARTAGLIA, JR, PHILIP A. KHAN, ESQ., RICHARD J. HOLLANDER, ESQ., M. VERNON ROWE, JR, ROWE-LANTERMAN HOME FOR FUNERALS, and JOHN J. DELANEY, JR, ESQ. CARR, *et. al.*, | : |
| Defendants. | : |
| JOHN J. DELANEY, JR., ESQ., | : |
| Third-Party Plaintiff, | : |
| v. | : |
| H. DAVID SEIDMAN, ESQ., | : |
| Third-Party Defendant. | : |

**Hon. Dennis M. Cavanaugh**

**OPINION**

Civ. No. 08-CV-4116 (DMC) (JAD)

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motions of Defendant Richard Hollander ("Hollander") and Third-Party Defendant H. David Seidman ("Seidman"). Defendant Hollander moves to dismiss the Complaint of Plaintiff Vist Financial Corp. ("VIST") for lack of subject matter and personal jurisdiction. Seidman moves to dismiss the third-party contribution claim of Defendant John J. Delaney ("DeLaney") for lack of personal jurisdiction and failure to state a claim.

After carefully considering the submissions of the parties, and based upon the following, Hollander's motion to dismiss VIST's Complaint is **denied**,[1] and Seidman's motion to dismiss DeLaney's third-party claim for contribution is **granted**.

## I. BACKGROUND

### A. THE PARTIES

VIST is a Pennsylvania Corporation that provides finanical services; its prinicpal place of business is in Pennsylvania. Complaint ("Comp.") ¶1. Defendant Tartaglia is an individual residing in Florida. Id. ¶2. Tartaglia is the record title holder of commercial real estate in Morristown, New Jersey ("the Property"). Id. ¶3. Defendant Rowe is an individual residing in New Jersey, who owns and manages Defendant Rowe-Lanterman Home for Funerals ("Rowe-Lanterman"). Id. ¶5. Rowe-Lanterman occupies a portion of the Property. Id. ¶7.

Defendant Delaney resides in New Jersey and is a licensed attorney who practices law in New Jersey. Id. ¶9. Delaney represented Rowe and Rowe-Lanterman in connection with the matters at issue. Id. ¶10. Defendant Khan also resides in New Jersey and is a licensed attorney who practices in New Jersey. Id. ¶11. Khan represented Tartaglia in connection with the matters at issue as New Jersey counsel. Id. ¶12. Defendant Hollander is an attorney who resides and practices in Florida. Id. ¶13. Hollander represented Tartaglia in connection with the matters at issue as Florida counsel. Id. ¶14.

---

[1] Hollander's motion, with respect to his arguments regarding lack of personal jurisdiction, is denied without prejudice.

## B. FACTS

To refinance the Property, Tartaglia borrowed the sum of $900,000 from VIST ("the Loan"). Id. ¶26. In connection with the Loan, on June 29, 2001, VIST and Tartaglia executed a Promissory Note, a Loan Agreement, a Mortgage and Security Agreement, a Lockbox Agreement, a UCC Financing Statement, and an Assignment of Rents, Leases and Profits (collectively, "the Loan Documents"). Id. ¶27. Pursuant to the Loan Documents, Tartaglia was required to pay VIST the Loan amount with interest thereon at an adjustable interest rate on the unpaid prinicpal balance until paid, with principal and interest to be paid in monthly installments based on the unpaid principal balance of the Loan, commencing on the first day of August 2001, and on the first day of each month thereafter, with a final payment of unpaid principal and interest due and payable on June 29, 2006. Id. ¶28. Additionally, Tartaglia was required to pay all applicable taxes and maintain insurance on the Property. Id. ¶29.

The Loan was secured by a mortgage in the amount of $900,000 on the Property. Id. ¶30. Further, Tartaglia agreed to the assignment of rents, leases and profits to VIST related to the Property as security and payment for the Loan. Id. ¶31. Tartaglia was obligated to instruct the tenants to remit payment to VIST directly. Id. ¶¶46-49. Upon default, the unpaid principal and interest may, at the option of the Note holder, become immediately due and payable. Id. ¶50.

At the time the Loan Documents were signed, the Property was subject to various lease agreements between Tartaglia and multiple commercial and residential tenants. Id. ¶32. The first floor of the Property was leased to Rowe and Rowe-Lanterman. Id. ¶33. Prior to closing on the Loan, Tartaglia provided VIST with a copy of an unsigned commercial lease between Tartaglia, as

-3-

landlord, and Rowe-Lanterman, as tenant, with Vernon Rowe and John Rowe as guarantors. Id. ¶35. The monthly rental amount identified in the Tartaglia/Rowe-Lanterman lease was $8,400 per month, not including taxes, utilities and other expenses. Id. ¶36.

Tartaglia also provided VIST with a copy of a residential lease for the Property between Tartaglia, as landlord, and Robert Rieber, as tenant, for a monthly rental amount of $3,000. Id. ¶37. In addition, Tartaglia provided VIST with a copy of a residential lease for the Property between Tartaglia, as landlord, and Laura Leach, as tenant, for a monthly rental amount of $1,800. Id. ¶38.

Pursuant to the leases, the total monthly rental income for the Property was $12,226.30 with a total annual rental income of $146,715. Id. ¶39. Rowe, Rowe-Lanterman, Leach and Rieber each executed a statement ("Tenant Statement") confirming their monthly rental lease payments, acknowledging VIST's Loan to Tartaglia, and acknowledging the assignment of their leases to VIST under the Loan Documents. Id. ¶40. Under the Loan Agreement, Tartaglia agreed that he would "[n]ot enter into any commercial lease assignment[s] . . . of the . . . Property without the prior written approval of Lender [i.e., Vist]." Id. ¶41. The tenants leased the Property, and continued to pay monthly lease payments directly to Tartaglia. Id. ¶42.

Since May 2004, Tartaglia has been in default of the Loan and in breach of the Loan Documents. Id. ¶51. Specifically, Tartaglia breached the Loan Documents by failing to pay real estate taxes due and owing on the Property, to maintain insurance on the Property, and to make loan Payments. Id. ¶52. VIST served Tartaglia with written notice of default on May 25, 2005. Id. ¶55. In June 2005, VIST filed a foreclosure action against the Property in the Superior Court of New Jersey. Id. ¶56. VIST has purchased insurance on the property, and paid over $100,000 in unpaid

taxes on the property.  Id. ¶¶53,54.

 After foreclosure proceedings were initiated, Tartaglia filed a petition for Bankruptcy.  Id. ¶57.  In light of the Bankruptcy, VIST withdrew its foreclosure complaint.  Id. ¶58.  Tartaglia filed three bankruptcy petitions (the first two were dismissed for failure to properly participate in the proceedings).  Id. ¶¶58-63.  In his third bankruptcy petition, Tartaglia did not list VIST as a creditor and did not list the Property securing VIST's Loan.  Id. ¶65.  In the Bankruptcy matters, Tartaglia was represented by Defendant Hollander and Edward Miller.  Id. ¶64.  Ultimately, the bankruptcy court dismissed Tartaglia's third bankruptcy petition, and the stay on the foreclosure proceedings was lifted.  Id. ¶70.  VIST's foreclosure action proceeded uncontested.  Id. ¶75.  VIST seeks in excess of $1,000,000 in damages.  Id. ¶76.

 In July 2005, after Tartaglia failed to make loan payments, VIST wrote to all tenants of the Property, and instructed them to make payments to VIST (not Tartaglia).  Id. ¶80.  Rowe/Rowe-Lanterman deposited their rent payments into a trust account operated by attorney DeLaney.  Id. ¶¶84-86.  For approximately one year, Rowe/Rowe-Lanterman continued to make deposits into the trust account.  Id. ¶86.  Upon direction from Hollander (Tartaglia's bankruptcy counsel) Delaney released the funds to an account held by Tartaglia's son, despite the Loan Documents provisions directing otherwise.  Id. ¶85.  VIST asserts that, in conjunction with DeLaney, Rowe/Rowe-Lanterman intentionally violated the Loan Documents in return for more favorable lease terms from Tartaglia.  Id. ¶97.

 VIST asserts that Tartaglia continues to receive rental payments from the leases despite the fact that VIST has been required to support the property (i.e., pay taxes, purchase insurance).  Id.

¶103.

## C. PROCEDURAL POSTURE

On August 19, 2008, VIST filed its Complaint in this matter. VIST asserts claims against all Defendants for conversion, aiding and abetting, civil conspiracy and negligence; claims against Delaney, Rowe and Rowe-Lanterman for tortious interference with contract; claims against Kahn, Hollander and Delaney for breach of fiduciary duty; claims against Tartaglia, Rowe and Rowe-Lanterman for breach of the duty of good faith and fair dealing; and a claim against Tartaglia for breach of contract.

On September 29, 2008, Defendant DeLaney filed an answer, cross-claim and third-party complaint. Doc. No. 57, at 2. DeLaney's third-party claim is one for contribution against Seidman (VIST's attorney). DeLaney asserts that Seidman knew that Rowe and Rowe-Lanterman were transferring rent monies to DeLaney, and notwithstanding this knowledge, Seidman failed to take sufficient steps to compel Rowe/Rowe-Lanterman or Mr. DeLaney to release and/or deliver those rent monies to Plaintiff VIST. Id. DeLaney asserts that in so doing, "Seidman breached the duty of care he owed to [VIST] and his conduct was the direct and proximate cause of any loss suffered by [VIST] as a result of not collecting rent monies from [Rowe/Rowe-Lanterman; and therefore DeLaney] is entitled to contribution from Mr. Seidman for any and all damages that may have been suffered by the Plaintiff." Id.

On December 7, 2009, Hollander moved to dismiss VIST's Complaint for lack of subject matter and personal jurisdiction. On December 11, 2009, Seidman moved to dismiss the third-party contribution claim of Delaney for lack of personal jurisdiction and failure to state a claim. These

motions are the subject of this Opinion.

## II. APPLICABLE LAW

### A.   SUBJECT MATTER JURISDICTION

Diversity jurisdiction is properly invoked where the parties are citizens of different states and the amount in controversy exceeds $ 75,000.  28 U.S.C. § 1332(a).  If any plaintiff is a citizen of a state where any defendant is also a citizen then the parties are not diverse.  Midlantic Nat'l Bank v. Hansen, 48 F.3d 693, 696 (3d Cir. 1995).  Further, a corporation is a citizen of any state in which it is incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c).

### B.   PERSONAL JURISDICTION

A plaintiff must establish that personal jurisdiction is proper over the defendant(s).  Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992) ("[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction.").  In this instance, the New Jersey long-arm statute applies, which specifically extends New Jersey's jurisdiction to the fullest limits permitted by the U.S. Constitution, subject to due process of law.  Osteotech, Inc. v. Gensci Regeneration SCI, Inc., 6 F.Supp. 2d 349, 352 (D.N.J. 1998).  To determine whether personal jurisdiction exists under the due process clause, the appropriate inquiry is whether defendants have sufficient minimum contact with New Jersey such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contact requires "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and

-7-

protections of its laws." Hanson v. Denckla, 357 U.S. 235 (1958).

A court may exercise either "general" or "specific" personal jurisdiction over a defendant. A defendant may be subjected to general jurisdiction when he or she has maintained "continuous and systematic" contacts with the forum state--even if the conduct from which the claims arises occurs outside of the jurisdiction. Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products, 75 F.3d 147, 151 (3d Cir. 1996) (citation omitted); Burger King, 471 U.S. at 473 n. 15.

A defendant may be subjected to specific jurisdiction "when the cause of action arises from the defendant's forum related activities, such that the defendant should reasonably anticipate being haled into court there." Vetrotex, 75 F.3d at 151. Accordingly, "[s]pecific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (quoting Burger King, 471 U.S. at 472). Conduct giving rise to specific jurisdiction, then, must be tied to the particular claim asserted.

Alternatively, in torts cases, courts may also apply the "effects test" articulated by the Supreme Court in Calder v. Jones to establish jurisdiction. 465 U.S. 783 (1984); see IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998) (adopting Calder "effects" test in a tortious interference case). "Under the effects test, a court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 148 (3d Cir. 1992). The Third Circuit has developed three prongs for the Calder "effects test": (1) the defendant must have committed an intentional tort; (2) the plaintiff must have felt the brunt of the harm caused by the tort

in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; (3) the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of tortious activity. See IMO Industries, 155 F.3d at 265.

The Court also notes that a conspiracy-based theory of personal jurisdiction can provide the basis for an exercise of jurisdiction. To satisfy this test, a plaintiff must "(1) make a prima facie showing of conspiracy; (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act in [the forum state] during and pursuant to the conspiracy." Wortham v. KarstadtQuelle AG, 320 F. Supp. 2d 204, 222 (D.N.J. 2004); see Fiscus v. Combus Fin. AG, 2004 U.S. Dist. LEXIS 29844, at *17 (D.N.J. July 22, 2004).[2]

### C.    FAILURE TO STATE A CLAIM

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In Bell Atlantic Corp. v.

---

[2] Establishing personal jurisdiction over a defendant based upon his or her participation in a conspiracy which has sufficient contacts with a forum state requires the party asserting jurisdiction to make a prima facie showing of a conspiracy under the applicable state's law. Wortham, 320 F. Supp. 2d at 222; Fiscus, 2004 U.S. Dist. LEXIS 29844, at *18.

Twombly the Supreme Court clarified the Rule 12(b)(6) standard. 550 U.S. 544 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, at 1968 (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. Ultimately, the question is whether the claimant can prove a set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

## III. DISCUSSION

Pending before this Court is Hollander's motion to dismiss VIST's complaint for lack of subject matter and personal jurisdiction, as well as Defendant Seidman's motion to dismiss Delaney's third-party contribution claim for lack of personal jurisdiction and failure to state a claim. The Court will consider each of the various grounds for dismissal.

### A. HOLLANDER'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

In his motion to dismiss, Hollander first asserts that this Court does not have subject matter jurisdiction with respect to VIST's claims against him. Specifically, Hollander asserts that the maximum value of damages potentially attributable to him would be $48,689.46, i.e., the value of the funds that DeLaney allegedly transferred to Tartaglia, instead of VIST. See Doc. No. 13-4, at 6. (As detailed above, see Section I.B. supra, these funds were being held in escrow by Delaney (on

behalf of Rowe/Rowe-Lanterman.)  VIST's allegations against Hollander are that the money was improperly wired from Delaney to Tartaglia upon Hollander's request.  Therefore, Hollander asserts, even accepting VIST's contentions as true, VIST cannot establish the amount in controversy requirement for diversity jurisdiction as to him.  The Court does not agree.

In St. Paul Mercury Indemnity Co. v. Red Cab Co., the Supreme Court long ago established the standard for deciding whether the required amount in controversy has been adequately alleged:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that .  .  . the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

303 U.S. 283, 288-89 (1938) (footnotes omitted).

Here, in addition to the $48,689.46 of funds allegedly released from DeLaney's trust account—the funds for which Hollander is alleged to be directly responsible—VIST also asserts that Hollander is, at least in part, responsible for preventing the future payments of rental income to VIST (which totals well above the $75,000 threshold).  See Comp. ¶¶15-18 (describing that various counts asserted by VIST that involve the conduct of Defendant Hollander); see also Doc. No. 53, at 3 (noting that the claims against Defendants, including Hollander, are that they "secretly conspired to disperse the rental income held in trust and unilaterally abolished the trust agreement, no longer placing future rental payments into the trust account).  Hollander's role in preventing these additional funds from being transferred to VIST could conceivably bring the total damages attributable to Hollander to over $75,000.[3]  Accordingly, this Court cannot find that it is legally certain that the

_____

[3] Moreover, VIST seeks punitive and consequential damages, which would also put the amount in controversy over the $75,000 threshold.  Although Hollander urges that the Promissory Note between VIST and Tartaglia contains a waiver for punitive/consequential

amount in controversy has not been satisfied, or that the amount alleged by VIST was alleged in bad faith.

Hollander's motion to dismiss for lack of subject matter jurisdiction must, for the reasons stated, be denied.

## B.  HOLLANDER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Hollander also moves to dismiss on the grounds that this Court cannot exercise personal jurisdiction over him.   The Court will deny Hollander's motion on these grounds as well.

VIST's claims against Hollander are for:  conversion; aiding and abetting (in conversion and tortious interference with contract); civil conspiracy; negligence.  VIST asserts that jurisdiction may be based upon:  **(1)** the traditional specific personal jurisdiction analysis (i.e., jurisdiction arising as a result of Hollander's contact with the forum state, out of which VIST's claims arise),[4] and **(2)** the fact that the effect of Hollander's conduct was felt in New Jersey.[5]  Additionally, while neither party explicitly raised the issue, personal jurisdiction could potentially be maintained by virtue of a conspiracy based in the forum state.[6]  The Court will consider the several jurisdictional analyses in

_____

damages, it is not clear that the Note governs the subject interaction between VIST and Hollander.

[4] Although VIST summarily argues that the Court has general jurisdiction over Hollander, this Court is unconvinced, and will focus on VIST's arguments for specific jurisdiction.

[5] See Doc. No. 24, at 6; see also Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. Pa. 2007) (noting that although they have similar objectives, the "effects test and traditional specific jurisdiction analysis are different"; Le-Nature's Inc. v. Wachovia Capital Mkts., LLC, 2009 U.S. Dist. LEXIS 85151, at *56-60 (W.D. Pa. Sept. 16, 2009) (same).

[6] Wortham, 320 F. Supp. 2d at 222; Fiscus, 2004 U.S. Dist. LEXIS 29844, at *17. Throughout its brief, and in its complaint, VIST repeatedly references an alleged conspiracy.

-12-

turn.

    1.   Traditional Personal Jurisdiction Analysis

To determine whether specific jurisdiction exists under the traditional analysis, courts apply a three-part inquiry. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). As the Third Circuit in Marten explained,

> First, the defendant must have "'purposefully directed' his activities'" at the forum. Burger King, 471 U.S. at 472 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. Helicopteros, 466 U.S. at 414. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).

499 F.3d at 296. Specific jurisdiction may be asserted, "even if the contacts [between Defendant and the forum state] are isolated and sporadic, so long as the cause of action arises out of or relates to those contacts." Id. (citing Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003). Indeed, a "substantial connection" with a forum arising out of a "single act can support jurisdiction." Burger King, 471 U.S. at 475 n.18 (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). Courts do not adhere to a mechanical formula, but rather consider "the quality and nature of the defendant's activity in relation to the fair and orderly administration of the laws" to determine if the minimum contacts standard is satisfied. International Shoe, 326 U.S. at 319.

Here, Hollander asserts that his contact with New Jersey was merely random or gratuitous, and therefore personal jurisdiction cannot be maintained based upon this limited contact. See Doc.

_____

VIST does not, however, independently address the alleged conspiracy as forming a basis for jurisdiction.

No. 13-4, at 20 (citing <u>Lebel</u>, 115 N.J. at 323 and <u>Burger King</u>, 471 U.S. at 475). Hollander asserts that "[t]he entirety of VIST's claims against Hollander arise from Hollander's mere use of a facsimile to transmit a letter" to an attorney located in New Jersey. <u>Id.</u> at 22.[7] For a number of reasons, this Court cannot agree with Hollander's characterization of his contact with New Jersey.

First, as an initial matter, it appears that there were additional contacts (beyond the single facsimile), between Hollander and New Jersey. In particular, there appear to have been additional contacts with New Jersey based counsel for Tartaglia and Rowe/Rowe-Lanterman—Khan and DeLaney, respectively. <u>See</u> Doc. No. 24, at iv. This is not surprising, as the property at the center of this suit was located in New Jersey, and Tartaglia and Rowe retained New Jersey counsel to represent them in connection with the finances of the property.

Second, Hollander suggests that his contact with DeLaney in New Jersey was merely a "non-legal" request. <u>See</u> Doc. No. 13-4, at 23. The Court is not persuaded by Hollander's attempt to minimize the significance of his contact with DeLaney and Khan (whatever the true extent of these contacts may be). Even if Hollander's contact with New Jersey was not formal, e.g., correspondence as opposed to in-court filings, that does not make his instructions regarding the handling of a client fund "non-legal." The proper management of client trust funds is a fundamental duty for all legal professionals. <u>See</u> <u>In re Cavuto</u>, 160 N.J. 185, 195-96 (1999) (describing the zero-tolerance approach that courts take with attorneys' actions relating to client funds).

Third, the trust in issue was based in New Jersey. The trust monies were being supplied by

---

[7] While many of the facts surrounding personal jurisdiction are disputed, Hollander does not dispute that he sent a letter to DeLaney requesting that DeLaney release the funds in the trust account to Tartaglia's son. <u>See</u> Doc. No. 13-4, at 22-23; Doc. No. 1-1, at Ex. O.

a New Jersey resident, and the fund was maintained by Tartaglia's New Jersey counsel (DeLaney). Further, the fund were directly related to a dispute over a piece of New Jersey real estate. The Court, therefore, cannot accept Hollander's argument that he engaged in "no New Jersey forum-related activities as concerns the allegations in the Complaint. Doc. No. 13-4, at 23.

The Court finds that Hollander's conduct—i.e., communications to his client's New Jersey counsel, concerning a New Jersey-based trust fund, which consisted of funds generated by a property located in New Jersey—is sufficient to justify the assertion of personal jurisdiction in New Jersey. See Eaton Corp. v. Maslym Holding Co., 929 F. Supp. 792, 798 (D.N.J. 1996) ("[C]ommunications directed into New Jersey go a long way toward establishing minimum contacts."); Synergy, Inc. v. Manama Textile Mills, W.L.L., 2008 U.S. Dist. LEXIS 12791, at *28 (D.N.J. Feb. 20, 2008); Kultur Int'l Films v. Covent Garden Pioneer, FSP., 860 F. Supp. 1055, 1062 (D.N.J. 1994) (finding that minimum contacts existed based upon phone calls, telefaxes, and letters sent in connection with negotiations and an agreement).

Moreover, this Court finds that exercising personal jurisdiction over Hollander in New Jersey does not offend traditional notions of fair play and justice. In so determining, the Court considers a number of factors such as "the burden on the defendant, the interests of the forum State, . . . the plaintiff's interest in obtaining relief, . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Miller, 89 F. Supp. 2d. at 567 (quoting Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113 (1987)). Here, taking VIST's allegations as true, Hollander conspired to interfere with the proper distribution of proceeds from the lease of property located in New Jersey. As previously noted, the funds were being held in a trust account in New

Jersey, maintained by attorneys who were practicing law in New Jersey.  Further, it is clear that, although based in Pennsylvania, VIST conducts some degree of business in New Jersey (the full extent of this business is not known to the Court at this time).  With these facts in mind, the Court finds that the private/public interest considerations noted above weigh in favor of maintaining personal jurisdiction here.  This is not one of the "rare cases" in which the "minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." Asahi, 480 U.S. at 116 (quoting Burger King, 471 U.S. at 477-478).

At this stage, based upon the allegations in the Complaint, as well as the documents proffered by VIST, the Court is satisfied that VIST has established "a prima facie case of personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007) (alterations in original) (internal quotation marks omitted).  The Court will deny Hollander's 12(b)(2) motion to dismiss for lack of personal jurisdiction.

### 2.  The Calder "Effects Test"

VIST also urges this Court may exercise jurisdiction based upon the "effects test" established by the Supreme Court in Calder, 465 U.S. 783 (1984).  As the Court has determined that jurisdiction is proper based upon the traditional personal jurisdiction test, it need not determine whether VIST can satisfy the requirements of Calder.[8]

---

[8] The Court will briefly remark upon the Calder test's applicability here.  There are three prongs to the "effects test" for personal jurisdiction. See IMO Indus., Inc., 155 F.3d at 261-66. The plaintiff must show (1) the defendant's act was an intentional tort, (2) the brunt of the harm was felt by the plaintiff in the forum state "such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort," and (3) the defendant's tortious conduct was "expressly aimed" at the forum state "such that the forum can be said to be the focal point of

### 3. Conspiracy Based in the Forum State

The Court notes, in passing, that personal jurisdiction can in some cases be based upon participation in a conspiracy that is located in, or has an effect upon, the forum state. See Fiscus v. Combus Fin. AG, 2004 U.S. Dist. LEXIS 29844, at *17 (D.N.J. July 22, 2004); see also Everest Nat'l Ins. Co. v. Sutton, 2007 U.S. Dist. LEXIS 65398 (D.N.J. Sept. 4, 2007); In re Bulk [Extruded] Graphite Prods. Antitrust Litig., 2004 U.S. Dist. LEXIS 29586, at *26 (D.N.J. Oct. 26, 2004). To do so, a plaintiff must "(1) make a prima facie showing of conspiracy; (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act in [the forum state] during and pursuant to the conspiracy." Wortham v. KarstadtQuelle AG, 320 F. Supp. 2d 204, 222 (D.N.J. 2004).[9]

Although this Court need not assess whether jurisdiction over Hollander can be based on his participation in a conspiracy, at this stage, the facts alleged by VIST would likely satisfy the test.

---

the tortious activity." Id. at 265-66. Here, the first prong is met as VIST asserts several business torts against Hollander which are intentional torts for the purposes of personal jurisdiction analysis. See, e.g., Remick v. Manfredy, 238 F.3d 248, 260 (3d Cir. 2001). The third prong also appears to be met, as Hollander's communications were to a New Jersey attorney (or attorneys), in regard to New Jersey funds/property. Whether the second prong can be met, however, is less clear—i.e., whether "[Hollander] knew that [VIST] would suffer the brunt of the harm caused by the tortious conduct in the forum [New Jersey]." IMO Indus., Inc., 155 F.3d at 266; Miller, 384 F.3d at 99-100; Remick, 238 F.3d at 260; see also Cornish v. Morris Communs. Co., LLC, 2009 U.S. Dist. LEXIS 61141, at *19-21 (D.N.J. July 16, 2009). It is true that VIST conducts business in New Jersey, and the client trust fund in issue was based in New Jersey. On the other hand, however, VIST is a Pennsylvania-based corporation. Regardless, the Court need not determine whether the effects test has been met for the reasons stated above in Section III.A.

[9] Establishing personal jurisdiction based upon participation in a conspiracy which itself has sufficient contacts with a forum state requires the party asserting jurisdiction to make a prima facie showing of a conspiracy under the applicable state's law. Wortham, 320 F. Supp. 2d at 222; Fiscus, 2004 U.S. Dist. LEXIS 29844, at *18

C.   SEIDMAN'S MOTION TO DISMISS DEFENDANT DELANEY'S THIRD-PARTY CONTRIBUTION CLAIM FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM[10]

On September 29, 2008, Defendant DeLaney (Rowe's counsel) asserted a third-party claim for contribution against Seidman, VIST's counsel.  DeLaney asserts that Seidman's own conduct (namely, his failure to act) render him responsible for any damages suffered by Plaintiff VIST. In particular, DeLaney asserts that Seidman knew that Rowe/Rowe-Lanterman were transferring rent monies to DeLaney, and because Seidman failed to prevent these transfers (and subsequent transfers), Seidman is responsible for the damage caused to VIST. See Doc. No. 57, at 3.

On December 11, 2009, Seidman moved to dismiss the third-party claim asserted by Defendant DeLaney.  This Court will grant Seidman's motion to dismiss.

The Court recognizes that there are circumstances under which an attorney owes a duty to a non-client under New Jersey law.  As the Appellate Division explained in Best v. Cooper Perskie April Niedelman Wagenheim & Levenson, P.A., an attorney may have a duty to a non-client:

> (1) when the attorney has a fiduciary duty respecting property of a third-party, Albright v. Burns, 206 N.J. Super. 625, 632, 503 A.2d 386 (App. Div. 1986) (holding attorney violated fiduciary duty to elderly man and his estate by aiding holder of decedent's power of attorney to divest estate of major asset); (2) when the attorney provides documentary information which will be relied upon by third parties, Petrillo v. Bachenberg, supra, [139 N.J. at 483-84, 486-489]; (attorney provided to real estate broker unreliable information regarding percolation tests subsequently relied upon by the purchaser), [Atl.] Paradise Assocs., Inc. v. Perskie, Nehmad & Zeltner, 284 N.J. Super. 678, 682-83, 666 A.2d 211 (App. Div. 1995) (attorney provided inaccurate

---

[10] Seidman also moves to dismiss on the grounds that he was not properly served with a summons.  Because any such deficiency in service can easily be remedied, the Court will address Seidman's substantive argument for dismissal: that DeLaney's Complaint fails to state a claim upon which relief may be granted.

-18-

information in public offering statement), cert. denied, 143 N.J. 518, 673 A.2d 276 (1996); (3) when the attorney misrepresents information, Davin v. Daham, 329 N.J. Super. 54, 72-78, 746 A.2d 1034 (App. Div. 2000) (attorney representing landlord inserted covenant of quiet enjoyment in tenant's long-term lease while knowing of likely foreclosure on property); and, (4) when the attorney assumes a duty to act, Stewart v. Sbarro, 142 N.J. Super. 581, 584-88, 362 A.2d 581 (App. Div.) (attorney for buyers of stock failed to obtain necessary signatures), cert. denied, 72 N.J. 459, 371 A.2d 63 (1976), LaBra[cio] Family [P'ship] v. 1239 Roosevelt [Ave.], 340 N.J. Super. 155, 165, 773 A.2d 1209 (App. Div. 2001) (purchaser's attorney assumed duty to vendors to record mortgage), R. J. Longo Constr. Co. v. Schragger, 218 N.J. Super. 206, 209-10, 527 A.2d 480 (App. Div. 1987) (township attorney failed to obtain easement rights-of-way as represented in bid documents and contract).

2006 N.J. Super. Unpub. LEXIS 2083, at *15-17 (App.Div. Nov. 1, 2006), cert. denied, 189 N.J. 647 (2007). The excerpt above illustrates that Seidman does not have a duty to DeLaney for two reasons.

First, attorneys' duty to non-clients (including opposing counsel) typically arises in situations where the attorney takes an affirmative act, or makes a material omission upon which a party foreseeably relies. See id.; see also LNC Invs., Inc. v. First Fid. Bank, N.A., 1997 U.S. Dist. LEXIS 12858 (S.D.N.Y. Aug. 27, 1997) ("In addition, in nearly all of the cases in which the New Jersey Courts have found a duty running to non-clients, the attorney has communicated in some way or made some representation directed in some way to the non-client which, the courts held, the non-client foreseeably relied upon"); see also In re MTC Elec. Techs. S'holders Litig., 1998 U.S. Dist. LEXIS 23502 (E.D.N.Y. Feb. 9, 1998) ("In order for an attorney to owe a duty of care to a nonclient, the attorney's legal advice must have been foreseeably transmitted to or relied upon by plaintiffs or that plaintiffs were intended beneficiaries of a transaction to which the advice pertained.") (collecting cases). That is not the case here. DeLaney does not, and cannot, assert that Seidman made a representation upon which he or his client relied. Nor can DeLaney show a material omission that served to mislead DeLaney or his clients: Seidman contacted Rowe/Rowe-Lanterman

-19-

regarding VIST's claim to the rent monies; as a result they deposited the monies into DeLaney's trust account. Seidman, then, acted in an appropriate manner to protect the interests of his client. In fact, as DeLaney acknowledges, Seidman believed the funds would remain in the escrow account. See Doc. No. 57, at 6 ("Mr. Seidman was aware that Defendant Rowe Lanterman had submitted to its attorney, John J. DeLaney, Jr. To be held in escrow on its own behalf."). In light of this acknowledgment, this Court cannot see how Seidman—even if he did owe a duty to DeLaney—breached any such duty.[11]

Second, the Court must reject DeLaney's argument because DeLaney urges that this Court find a duty owed from Seidman to DeLaney that is unreasonably expansive in practical terms. Essentially, DeLaney asks this Court to impose upon Seidman a continuing duty to VIST/Rowe/DeLaney to prevent the improper allocation of the rental monies being held in trust. In light of facts not substantially in dispute in this case, such a duty would be inappropriate: Seidman contacted DeLaney's client Rowe directly seeking payment of the rent monies, see doc no. 1-1, at Ex. L; Rowe's concern with proper allocation of the funds was dealt with by setting up a trust account, see id., at Ex. M; Rowe's correspondence to DeLaney's specifically copied legal counsel for Plaintiff VIST, see id.; DeLaney himself appears to have been aware of the purpose of the trust, as he was hesitant to do anything with the funds until receiving a Court order, see id., at Ex. N. Under these circumstances, DeLaney cannot state a contribution claim that would impose upon

---

[11] DeLaney makes much of the fact that, "privity between an attorney and a non-client is not necessary for a duty to attach 'where the attorney had reason to foresee the specific harm which occurred.'" Although the Court agrees, this fact is inapposite. Doc. No. 57, at 7. This statement of the law actually undermines DeLaney's own argument—it was entirely **unforeseeable** to Seidman that the rent funds would be disbursed when he believed that DeLaney was holding them in trust. Id. at 6.

Seidman a duty to take any additional actions in ensuring that the disputed monies were properly safeguarded until a court order was obtained.

Accordingly, Seidman's motion to dismiss DeLaney's Complaint is granted.[12]


## IV.  **CONCLUSION**

For the reasons state above, Hollander's motion to dismiss VIST's complaint is **denied**, and Seidman's motion to dismiss DeLaney's third-party contribution claim is **granted**.


Dennis M. Cavanaugh, U.S.D.J.

Date:      July 14th, 2010
Orig.:     Clerk
cc:        All Counsel of Record
           Hon. Mark Falk, U.S.M.J.
           File

---

[12] This Court also notes that DeLaney's position is inconsistent.  DeLaney asserts that "Mr. Seidman knew or should have known that Mr. DeLaney owed no duty to Plaintiff and was not otherwise obligated to comply with any of the contractual obligations contained in any of the documents between the Plaintiff and Defendant Tartaglia."  Doc. No. 57, at 3.  Later in his brief, DeLaney asserts that Seidman, however, owes a duty to DeLaney, as "privity between Mr. Seidman and Mr. DeLaney was not necessary for a duty to attach."  Id. at 6.  That is, DeLaney appears to be contending that as defense counsel (for Tartaglia) he had no duty to Plaintiff VIST's attorney, but VIST's counsel did have a duty to Defendant Rowe and his counsel (DeLaney).